McCABE *v*. STATE.

4430                                          199 S. W. 2d 945

Opinion delivered January 20, 1947.

Rehearing denied February 17, 1947.

*Harper & Harper*, for appellant.

*Guy E. Williams*, Attorney General, and *Earl N. Williams*, Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Jerry McCabe's association with Orville Wayne Sloan and Bill Mondier the night of March 18, 1946, and death of Gerald Bradley, were mentioned in appeals reviewed by this Court November 25th, and December 16th, 1946. See *Sloan* v. *State, ante*, p. 739, 197 S. W. 2d 757; *Mondier* v. *State, ante*, p. 933, 198 S. W. 2d 177. Sloan was sentenced to serve five years in the penitentiary for murder in the second degree. Mondier was convicted of manslaughter and given a prison sentence of five years. McCabe drew

the maximum sentence of twenty-one years for murder in the second degree and contends, in the main, that the judgment should be reversed because of erroneous admission of testimony.

On direct examination by the Prosecuting Attorney, Pink Shaw—Fort Smith Chief of Police—testified that he took Sloan, Mondier, and McCabe to a hospital where Gerald Bradley (who had been mortally wounded by knife cuts) was being treated. One of the first questions asked Shaw was whether McCabe "was in the hospital at the time you were showing these men to the boys?" There was an affirmative answer.

After having Shaw detail the identification made by Bradley, Prosecuting Attorney Barham asked, "What did [Bradley] say?" Answer: "He said that McCabe cut him; and he said that big boy in the crowd cut my brother, the soldier."

The subject then shifted to the kind of clothes the three defendants were wearing. While this inquiry was in progress one of McCabe's attorneys asked, "Was this [conversation held] while the defendant was there?" Answer, "No, sir." The Prosecuting Attorney then said, "He was in the room at the time [Bradley] made that statement?" Answer: "Not at the time: he was out in the hall."

There was a defense objection, coupled with a motion to exclude Shaw's testimony. The Court commented: "The statement made by Gerald Bradley at the hospital will be excluded from the jury. You will not consider it in passing on the guilt or innocence of the defendant."

Shaw was then cross examined, and at the conclusion (after having been asked about statements McCabe and Sloan were alleged to have made to him and his act in taking McCabe before Bradley in an attempt at verification) the witness was asked: "All you know about it is what you have told here?" Answer, "That is all I remember."

The defendant then moved for a mistrial as shown in the footnote.[1]

The record does not indicate want of good faith on the part of the Prosecuting Attorney; neither does it disclose a lack of diligence by attorneys for the defendant. Shaw had testified that the accused men were brought to the hospital where Bradley saw them and identified McCabe. As to conversations Shaw had with Bradley— some of the details of which were given—it was assumed by all when Shaw testified that McCabe was in the room where Bradley was dying, or so near as to create a presumption that what was said must have been overheard; and it may have been.

This is not a case where questionable testimony was offered, objected to, and admitted over the defendant's protests. Shaw had not in any sense intentionally deceived the Court regarding circumstances under which the Bradley statements were made; but, when the direct question was put whether McCabe was in the room when Bradley described the clothing worn by Sloan, then, seemingly, for the first time, it occurred to attorneys for the defendant that perhaps McCabe was not *at that time* in the room. Shaw answered very frankly that McCabe was not within the immediate enclosure, ". . . at that time, he was out in the hall."

We must assume that the Court, in instructing the jury to disregard Bradley's statements to Shaw, thought the evidence sufficient to create an inference that McCabe was not within hearing distance. But it must also be remembered that the Court did exactly what it was then asked to do—direct that the testimony be disregarded. There was no request by the defendant for a stronger admonition from the Court than that given; in

[1] "The defendant moves the Court to declare a mistrial . . . for the reason that [it] erred in permitting . . . Shaw . . . to testify, over the objections of the defendant, to statements purportedly made to him by the deceased, when such statements were not so made; and erred in merely perfunctorily admonishing the jury not to consider it, for such admonition cannot cure it; [and the Court erred] in admitting the testimony of . . . Shaw . . . as to the identification of the defendant by the deceased as the man [who] cut him".

fact, there was no immediate insistence other than that to which the Court explicitly responded. It is true that in making his motion for a mistrial the defendant mentioned the "merely perfunctory admonition to the jury"; but even then there was no motion that the so-called prejudicial nature of the evidence be explained to the triers of fact.

It would be difficult to direct attention to an instance where incompetent testimony got into the record in a more guileless manner than here. No one intended to procure an advantage; and it is equally clear that the courteous manner in which attorneys for the defendant met the issue discloses a conviction upon their part that the questions were asked in good faith, and answers accordingly given. In these circumstances the jury's common sense will be presumed. It is highly improbable that the verdict rested alone upon what Gerald Bradley said: that the jury convicted him without considering circumstances and facts within themselves sufficient. Neither may we consider Bradley's statement as a dying declaration, as no effort was made to have it introduced as such.

As has been said so often, prejudice or non-prejudice may result from the nature of testimony offered, the manner in which it is presented, the circumstances which give rise to questions or answers, the emphasis placed by witnesses upon collateral issues not intended by the trial judge to go before the jury, and incidental phases of many kinds.

What the Constitution guarantees, and a right Courts guard with meticulous care, is that every defendant against whom criminal accusations have been made is given "a fair and impartial trial." McCabe, Sloan, and Mondier, although jointly informed against, procured severance; and each was entitled to resulting benefits. But taking the reasonable man's viewpoint (assuming such exists) and considering the conditions under which objectionable testimony was brought out, we cannot believe that the jury regarded the identification by Shaw

as substantive evidence, or that its verdict turned upon this incident.

The extent to which a Judge must go in emphasis of admonition in order to erase memories from a jury's mind can never be determined with mathematical, scientific, or psychological precision: we can only take facts at their ordinary value, weigh them by known processes of reasoning, and from the result conclude that prejudice did, or it did not flow from the inadmissible matter. In the instant case we are unable to see how, as a matter of law, the appellant was prejudiced when the Court's emphatic direction was that Shaw's statement of what he heard Bradley say should not be regarded as evidence.

Other questions are raised, but we do not regard them as of reversible importance; hence the judgment is affirmed.