EVERETT *v.* STATE.

Opinion delivered March 21, 1960.

*Lightle* and *Tedder, Eldridge* and *Eldridge,* for appellant.

*Bruce Bennett,* Attorney General, by *Ancil M. Reed,* Asst. Attorney General, for appellee.

JIM JOHNSON, Associate Justice. This is a criminal case. The appellant, C. E. "Doc" Everett, was arrested December 17, 1958, and charged with first degree murder of one, Troy Lee Burks.

Everett was, at the time, the owner and operator of "Doc's Club", a beer tavern located on Front Street, Bald Knob, Arkansas.

Burks, a member of the U. S. Air Force, stationed at Jacksonville Air Base, was with two civilian companions, John Barger and Milton Brady. They had met at North Little Rock the afternoon of Burks' death and after a few beers proceeded North on Highway No. 67, making numerous stops for additional drinking.

Both Barger and Brady had felony records and by the time of trial Barger was again in the State Penitentiary. Brady had a long record of drunkenness and fighting. All three were on a drunken spree the night of the trouble.

They arrived at Doc's Club just after 9:00 p.m. They were loud and boisterous and began causing trouble. The cashier at the counter first tried to find the police but being unsuccessful called Everett who was asleep in his bedroom in the rear.

Appellant came out front and tried to reason with the three. Brady, the most drunken and rowdy, reached across the counter for Everett, who then shoved him from the stool upon which he had been sitting.

From that point events moved swiftly and just what happened varied with the testimony of the witnesses. Except for the testimony of convict Barger, all other eyewitnesses generally agreed that Everett moved to his right to the open end of the counter and that he and Burks met at that end of the building. They engaged in a short scuffle, Burks either hitting or choking Everett who in turn was hitting Burks.

Everett, thinking that he "was about to be attacked by all three drunks" had taken his gun from behind the counter and was using it to club Burks. In some unknown manner it fired, shooting Burks in the neck just below the left ear. None of the witnesses (except Barger) saw the gun prior to the shot. None saw appellant shoot the pistol. All agree he hit at Burks more than once. He thought he "hit him two or three times before the gun went off." Everett's testimony was to the effect that the shot was entirely accidental.

Following on the heels of a bitterly contested "Wet-Dry" election, feeling ran high in the community. Everett petitioned the court for a change of venue, which was denied. The case was then tried in the White Circuit Court in July 1959.

The State used only one eyewitness, the convict Barger, to prove their *prima facie* case. They then were permitted to use numerous officers to prove the finding of a knife near the body of the deceased, and a set of similar knives in the "block". No witness testified that the deceased used a knife, nor did the defendant ever claim such as a defense. The trial resulted in a verdict and judgment of second degree murder and a sentence of eighteen years. From such judgment comes this appeal.

In addition to eight assignments of error contained in the Motion for a New Trial, appellant argues the court erred in refusing to grant a change of venue. This latter argument was the closest question presented for our consideration. We will not here discuss this and other assignments raised by appellant except those upon which this opinion rests.

Assignments numbered 1, 2, and 3 in the Motion for a New Trial pertain to the same general legal principles and will be here discussed in the order in which they were made. The assignments are as follows:

1. The court erred in permitting the State of Arkansas to offer incompetent and immaterial evidence relative to a certain knife and other instruments upon presentation of the State's case. That the only evidence otherwise offered by the State revealed no connection with the incompetent evidence. That the only purpose of such evidence was to inflame the jury and induue in their minds a belief that the defendant was trying to frame a defense which in truth and in fact the defendant at no time presented.

2. The court erred in permitting the State to attempt to impeach the defendant's witnesses Gene Blount and Billie Hughes, upon matters concerning which they were not interrogated upon direct examination, but about

which the State inquired upon cross-examination, and for such purposes made them witnesses for the State — namely, relative to the finding of a knife near the body of the deceased.

3. The court erred in permitting the State to offer as rebuttal evidence transcribed records in a purported effort to impeach the testimony of the defendant's witness Gene Blount concerning the matters mentioned in paragraph 2 above and which were brought out wholly by the State on cross examination.

Relative to the first assignment, the record reveals that there were numerous eyewitnesses to this homicide. The State, after introducing the testimony of only one of these eyewitnesses, on its own case in chief called officers Bolin, Mitchum, Price, Varnell, Clayton and Neighbors, whose testimony was used chiefly to introduce a butcher knife, a set of steak knives and a purported finger print of appellant on a fork similar to those on the steak set. The butcher knife was first introduced by the evidence of officer Bolen who testified: "A lady said something about a knife, and she gave me a knife." This officer had previously investigated and inquired about weapons. He had examined the body but had not seen or noticed a knife.

The appellant throughout the trial made timely objections and exceptions to the testimony relative to these items being admitted in evidence. At one point in the case, the court ruled:

"There was some testimony by the officer down there that night that the knife was given to him that was supposed to have been involved in the fracas, that is the reason this testimony has now been permitted for whatever it is worth, if it is not connected, then you may renew your motion."

At no point in the case was the knife, the steak knife set, or the fork in any way identified as having been used by either the defendant, or the deceased, or to have any connection with the affray, yet by the close of

the State's testimony the court was ruling that they were admissible in evidence.

In 20 Am. Jur. § 247, Evidence, we find the following:

"Relevancy has been defined as that which conduces to the proof of an hypothesis which, if sustained, would logically influence the issue."

Footnote 3 at page 241 of the same volume cites *Tyrrell* v. *Prudential Insurance Company*, 109 Vt. 6, 192 A. 184:

. "The test of admissibility of evidence is whether the fact offered in proof affords a basis for rational inference of the fact to be proved."

The fact to be proved by the prosecution in the case of C. E. "Doc" Everett was that he, the appellant, committed murder in the second degree, second degree murder requiring a proof by the prosecution that said killing was done with malice aforethought.

When considered with the other evidence presented by the prosecution, we find the introduction of the mass of testimony relating to the "knife" would have no bearing on the proof required by the State to support a conviction of second degree murder. Therefore, it was incompetent evidence.

In *McCabe* v. *State*, 210 Ark. 1076, 199 S. W. 2d 945, this Court said again:

"As has been said so often, prejudice or non-prejudice may result from the nature of testimony offered, the manner in which it is presented, the circumstances which give rise to questions or answers, the emphasis placed by witnesses upon collateral issues not intended by the trial judge to go before the jury, and incidental phases of many kinds."

And in *Elder* v. *State*, 69 Ark. 648, 65 S. W. 938, we said:

"There may or may not be more reason for doubt as to whether this evidence was prejudicial or not. But

the rule is that evidence improperly admitted must be treated as prejudicial unless there is something to show that it was not.''

Of course, if the appellant in this case had based his defense on an attack by the deceased upon his person with a knife, then the introduction of this evidence by the State would have had some relevancy but such was not the case. Therefore, the evidence about the knife was inadmissible because of its lack of relevancy.

Assignments Nos. 2 and 3 raise the same legal questions. Therefore, they are discussed together. For brevity, only the questions raised relative to the testimony of witness Gene Blount will be treated here.

The record reveals that on cross examination of defendant's witness, Blount, the State asked questions concerning the ''knife'' and then attempted to impeach or discredit the witness by reading from a purported statement and asking him if he had not made statements contrary to those being made in court.

In rebuttal, the State was permitted by the court to play to the jury an alleged recording of an examination of the witness Blount concerning the knife by the prosecuting attorney the night of the affray. Timely objections were made by the defendant.

In considering the question here presented, this Court has said, in effect, many times that while it is proper to permit a witness to be asked as to specific acts affecting his credibility, yet if such matters are collateral to the issue he cannot, as to his answer, be subsequently contradicted by the party putting the question. See: *McAlister* v. *State*, 99 Ark. 604, 139 S. W. 684.

The rule that one may not impeach his own witness is too well known to require citation.

A well-known exception, however, is that where the testimony surprises the one offering it — as in this case the State — they may then offer prior contradictory statements if a proper basis of surprise is claimed. In the instant case the State claimed no surprise. On col-

lateral matters, however, the exception to the main rule does not exist. In the case at bar we find that these were wholly collateral matters that had no place in the trial. See: *Eddington* v. *State*, 225 Ark. 929, 286 S. W. 2d 473; and *Hawkins* v. *State*, 223 Ark. 519, 267 S. W. 2d 1.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

HARRIS, C. J., and McFADDIN, J., dissent.