Frank James FREEMAN, Clarence J. ROLAND Jr. and Herod Louis BOYD
*v.* STATE of Arkansas

CR 75-67                                              527 S.W. 2d 623

Opinion delivered September 15, 1975
[Rehearing denied October 20, 1975.]

*Jeff Duty* and *W. Harold Flowers*, for appellants.

*Jim Guy Tucker*, Atty. Gen., by: *Jack T. Lassiter*, Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Frank James Freeman, Clarence J. Roland, Jr., and Herod Louis Boyd, appellants herein, were charged and convicted of possessing, with intent to deliver, a controlled substance, namely heroin, the jury fixing the punishment of each at 30 years imprisonment in the Arkansas Department of Correction. From the judgment so entered, appellants bring this appeal.[1] For reversal, three points are argued, which we proceed to discuss.

"I.

THE COURT ERRED IN OVERRULING THE MOTION FOR CONTINUANCE."

---

[1] Freeman and Roland were represented by the same attorney, and Boyd was represented by separate counsel, not counsel here representing Boyd on appeal.

The record reflects that appellants Freeman and Roland were arrested on July 10, 1974, and thereafter had contact with an attorney who apparently arranged to represent them. On September 26, 1974, one day before trial, Roland and Freeman filed a motion for continuance,[2] stating that they had learned they were required to pay a fee of $5,000 each to the attorney, and that it was impossible for them to pay such a fee; that they had been assured that they would be defended by the attorney up until September 18, at which time they were informed that he would not defend them; that they then contacted present counsel and made arrangements to employ him; that they had been offered the services of the public defender's office of Washington County, but preferred to retain their own counsel. It was asserted that it was impossible for present counsel to prepare fully and completely to defend them in the time allowed, and a continuance of not less than two weeks was sought. This motion was evidently presented to the court on the day of trial, and denied. Of course, a ruling upon a motion for continuance is within the sound discretion of the trial court, and the action of that tribunal will not be reversed absent a clear abuse of discretion. *Nowlin* v. *State*, 252 Ark. 870, 481 S.W. 2d 320 and *Perez* v. *State*, 236 Ark. 921, 370 S.W. 2d 613. In *Perez*, it was pointed out that the burden rests on an appellant to demonstrate an abuse of discretion by the trial court in denying a continuance. Actually, we have a number of cases where no abuse of discretion was found which involved lesser periods of time for preparation than in the instant case. In *Brown* v. *State*, 252 Ark. 846, 481 S.W. 2d 366, we upheld the denial of a motion for continuance where a defendant changed counsel five days prior to trial; in *Gathright* v. *State*, 245 Ark. 840, 435 S.W. 2d 433, a like ruling was upheld where new counsel was employed seven days prior to trial, and in *Ebsen* v. *State*, 249 Ark. 477, 459 S.W. 2d 548, we likewise found no abuse of discretion where counsel was retained three days prior to trial after previous counsel had withdrawn due to the appellant's failure to pay him. In the case before us, counsel was retained nine days in advance of the trial.

It might be pointed out that appellants have not shown in their motion, nor their brief, how, or why, they were in-

[2]Boyd did not file such a motion.

capable of preparing an adequate defense, *i.e.,* there are no facts alleged or shown, only a bare allegation that there was not enough time.

The motion also includes an allegation that counsel had "been informed on September 25, 1974 of articles in the newspaper concerning said case that tend to prejudice the citizens of Washington County against these defendants and that an application for change of venue may be necessary to protect the rights of these defendants." This phase of the motion that a continuance should be granted is not mentioned in the argument, but, of course, we could hardly find an abuse of discretion where an attorney merely alleges that he might find it necessary to subsequently file an application for change of venue. We hold that the court did not err in failing to grant the motion.

"II.

### THE COURT ERRED IN OVERRULING THE MOTION FOR A MISTRIAL ON ACCOUNT OF NEWSPAPER AND RADIO PUBLICITY."

After 12 jurors and an alternate had been seated, a motion for mistrial was made which was heard by the court in chambers. This motion was based on the fact that a Fayetteville newspaper had, on either the same day the trial commenced (Friday, September 27, 1974) or Thursday, September 26, published an article to the effect that a fourth defendant had pleaded guilty to the charge, and a smaller article appearing in a Springdale newspaper was to the same effect. Both mentioned that the trial of the three appellants was commencing "today,"[3] and mentioned appellants by name, and the Fayetteville newspaper article set out some of the details relative to the arrests. It appears that there had also been radio "spots."

---

[3] The date of the plea of the fourth defendant is not clear because the Springdale newspaper reported that the plea was entered on "Thursday," while the Fayetteville newspaper, which is dated Friday, September 27, states the plea was entered "Today"; this difference is not pertinent to the conclusion reached.

It is argued that publication of these articles was prejudicial to the rights of appellants, but under the circumstances as shown by the record, we cannot agree.[4] The court very carefully questioned the jurors as to whether they had read the news article, and all answered in the negative. The court then further addressed the jury as follows:

"THE COURT: Mr. Carlson, Mrs. Stubblefield, Mrs. Karp, Mrs. Caudle, Mrs. Miller, Mrs. Lewis, Mr. Cheatham, Mrs. Canup, Mrs. Bradshaw, Mr. Barnes, Mrs. Pruitt, Mr. Carter, Mrs. Burgess, I will ask all thirteen (13) of you individually. You have not heard anything today or heard anything yesterday about it by word of mouth or any news media whatsoever?

(All answer, "No" and shake their heads negatively.)"

Of course, a mere reading of a newspaper account of an incident does not, in itself, disqualify a juror since the juror might be able to put aside any opinion formed. *Davis v. State,* 251 Ark. 771, 475 S.W. 2d 155, and *Glover v. State,* 248 Ark. 1260, 455 S.W. 2d 670. But were it otherwise, there still would be no merit in appellants' contention, for here we have every member of the jury stating that they had not read the articles nor heard news comment. Certainly, it cannot be assumed that these jury members prevaricated in answering the court's questions.

"III.

THE COURT ERRED IN ADMITTING IN EVIDENCE THE PISTOLS ALLEGEDLY FOUND IN THE AUTOMOBILE OCCUPIED BY THE DEFENDANTS, ROLAND AND FREEMAN."

The officers, who apparently had information of the purported drug activities of appellants, had arranged a stakeout at a motel where a plainclothes officer was to make a purchase. Police personnel observed a Maverick automobile, in which appellants came to the motel, park at a service sta-

---

[4]The newspaper articles referred to under the first point were not mentioned in the motion for a mistrial.

tion near the motel. After the sale was made, appellants were arrested as they sat in this car. Near one of the appellants, on the backseat, was a nickelplated revolver,[5] and on the right floorboard was a brown paper sack which contained a fully loaded pistol. These weapons were offered into evidence at the trial by the state and appellants contend that this constituted error, stating, "These pistols had absolutely nothing to do with the crime charged." As authority for the position taken, appellants cite the case of *Cabbiness* v. *State,* 241 Ark. 898, 410 S.W. 2d 867. We do not consider *Cabbiness* as authority to sustain appellants' argument. There, Cabbiness, a resident of Little Rock, was charged with a burglary occurring in Berryville, Arkansas. After his arrest, police illegally searched his apartment in Little Rock and found a revolver. This revolver was described to the jury before the trial court upheld an objection to the evidence. The prosecuting attorney made another reference to the revolver and Cabbiness moved for a mistrial. This motion was denied, but the trial court polled the jurors, each of whom stated that he could disregard the reference to the revolver. In reversing the judgment of conviction, this court pointed out that the pistol and any reference to it were inadmissible on two grounds, first, because it was the fruit of an illegal search, and second, it was not related to the crime for which defendant was being tried; it was observed that the error was not cured by the subsequent poll of the jury "which tended to emphasize the error rather than to correct it." While this is the only case relied on by appellants, we think it well to mention two others, *Rush* v. *State,* 238 Ark. 149, 379 S.W. 2d 29, cited in *Cabbiness,* and *Everett* v. *State,* 231 Ark. 880, 333 SW. 2d 233, cited in *Rush.* In *Rush* v. *State, supra,* the defendant was charged with killing his stepfather with a .22 caliber rifle, in conspiracy with two other individuals. A .22 caliber pistol was offered into evidence by the state. Without going into detail, let it suffice to say that this pistol admittedly was not used, and further, had no connection with the murder. We said:

"The pistol in question is very heavy for a .22 caliber; it has a 9-inch barrel, and is rather wicked looking. The very fact that the pistol was admitted in evidence could

---

[5] The record does not reflect whether this revolver was loaded.

have had a tendency to confuse the jury, notwithstanding there is no contention on the part of the State that the pistol was used in the killing. In these circumstances we do not think the pistol was admissible in evidence. *Everett* v. *State,* 231 Ark. 880, 333 S.W. 2d 233."

In *Everett,* the defendant was charged with murder in a shooting death resulting from a barroom fight. Also, state witnesses testified that several knives had been found in the area. There was no contention that Everett or the victim had used a knife, nor did any witness so testify, and this court, in reversing, held that the introduction of the testimony relating to the knives was irrelevant to the charge of murder, and noted that no showing had been made that the testimony was not prejudicial.

We think it is apparent that the circumstances mentioned in these cases are entirely different from the circumstances of the case at issue. Certainly, in *Cabbiness,* a pistol obtained by an illegal search from a man's home, miles away from the scene of a crime, and no contention being made that Cabbiness was in possession of a pistol during the burglary, was not proper evidence. Nor could weapons offered in evidence which were not connected with the crime have any probative value whatsoever; not only that, the introduction of such weapons could be confusing, as pointed out in *Rush.*

Here, however, we think the pistols were relevant to the issue for which appellants were standing trial. We would think it to be a matter of common knowledge that narcotics transactions are frequently attended by morally offensive circumstances, and immoral participants.[6] The possession of two pistols by the appellants at the time such transaction was allegedly attempted would appear to have some probative force on the question of what business the men were about. The early case of *Carr* v. *State,* 43 Ark. 99 (1884) appears to be

---

[6]In *Stewart and McGhee* v. *State,* 257 Ark. 753, 519 S.W. 2d 733 (1975), we affirmed first degree murder convictions. Evidence reflected that several persons, including appellants, went to the home of the victim, who, according to testimony, dealt in drugs, for the purpose, according to witnesses, "to take some dope and we would get it with a gun if it was necessary." The victim was killed at the door of his apartment.

a leading decision in this state on admissibility of evidence comprising the *res gestae* of a criminal offense. There, the court explained the principle of *res gestae* as follows:

> "*Res gestae* are the surrounding facts of a transaction, explanatory of an act, or showing a motive for acting. They are proper to be submitted to a jury, provided they can be established by competent means, sanctioned by law, and afford any fair presumption or inference as to the question in dispute . . . . Now circumstances and declarations which were contemporaneous with the main fact under consideration or so nearly related to it as to illustrate its character and the state of mind, sentiments or dispositions of the actors are parts of the *res gestae*."

In the very recent case of *Turner v. State*, 258 Ark. 425, 527 S.W. 2d 580, we again had occasion to comment:

> "Circumstances so nearly related to the main fact under consideration as to illustrate its character and the state of mind, sentiment and disposition of the actor are parts of the *res gestae*, which embraces not only the actual facts of the transaction and the circumstances surrounding it, but also matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality part of the occurrence."

The state introduced this evidence as another circumstance to indicate the criminal intent of appellants. We are of the view that the possession of a loaded weapon, in the vicinity of the attempted sale, by those charged with possession with intent to deliver heroin, and found in the automobile in which the heroin had been brought to the site of the transaction, involving thousands of dollars,[7] is part of the *res gestae* and pertinent evidence on the question of intent. The court did not err in admitting the pistols in evidence.

Affirmed.

---

[7]This particular attempted sale (10 plastic containers, each containing heroin), never consummated, involved $16,000.00.