Ronald Lee KELLEY *v.* STATE of Arkansas

CR 76-181                                    545 S.W. 2d 919

Opinion delivered February 7, 1977
(Division II)

*Harold L. Hall,* Public Defender, by: *Robert J. Govar,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Dave Greenbaum,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Ronald Lee Kelley was found guilty of the crime of possession of a controlled substance with intent to deliver the substance (marijuana). On appeal, he first contends that the trial court abused its discretion in denying his motion for continuance. He also argues that the trial court erred in denying his motion to suppress certain evidence. We find no reversible error and affirm.

In considering the argument relating to the motion for continuance, it is necessary that we review some of the history of the case. The motion for continuance was not made until the morning of the trial. It was made for the purpose of procuring the attendance of David Hodges, alleged to be a material witness.

The crime was alleged to have been committed on November 22, 1975. The information charging appellant with

the crime was filed on February 11, 1976. Appellant was arraigned on March 8, 1976. He was represented by the Chief Deputy Public Defender of Pulaski County at that time. His jury trial was then set for May 11, 1976 and was held as set. Appellant was at liberty on bail at the time of his arraignment and until the date of his trial. In the interim, appellant had been cooperating with John Sparks, a detective in the narcotics section of the Arkansas State Police, in buying narcotics, and, on the eve of trial, was working on a transaction that the officer thought would be consummated later the same week.

Appellant had been aware of the trial date from the date of his arraignment. When he informed Sparks of it during the week preceding that date, the officer told him he would attempt to contact the prosecuting attorney and ask for a continuance. Sparks testified that he had been unable to do so until the morning of the trial because he was on assignment out of town. Even though appellant testified that he understood that his trial would be postponed, he also said that he understood that he was supposed to meet someone in the prosecuting attorney's office on the morning the case was set to take care of the matter, so he could make the planned buy. His anticipation of a successful arrangement was his excuse for not furnishing his lawyer with the names of witnesses for the trial. In his testimony at the hearing on the motion for new trial, he detailed the testimony he expected Hodges to have given. This testimony would have been material and relevant.

The action of the trial judge in denying a continuance will not be reversed on appeal in the absence of such a clear abuse of the sound judicial discretion of the trial judge as to amount to a denial of justice. *Figeroa* v. *State*, 244 Ark. 457, 425 S.W. 2d 516; *Thacker* v. *State*, 253 Ark. 864, 489 S.W. 2d 500. The burden rests upon an appellant to show that there has been such an abuse. *Freeman* v. *State*, 258 Ark. 496, 527 S.W. 2d 623.

There are several significant factors to be considered in the trial court's exercise of discretion in the matter of a continuance. Among them are the diligence of the movant, the probable effect of the testimony at the trial, the likelihood of

procuring the attendance of the witness in the event of a postponement, and the filing of an affidavit, stating not only what facts the witness would prove, but that appellant believes them to be true, as required by Ark. Stat. Ann. § 27-1403 (Repl. 1962). The denial of a motion which is not in substantial compliance with the statue is not an abuse of discretion. *Venable* v. *State*, 260 Ark. 201, 538 S.W. 2d 286 (1976).

Even if we say that appellant's testimony as to the anticipated testimony of Hodges was substantial compliance with the statutory requirements, there is absolutely no showing that Hodges would probably be available to testify at a later date, or that appellant believed that the facts as to which Hodges would testify to be true. What is more important there is no showing of diligence on the part of appellant. He was represented by counsel for over two months. There is no indication that appellant had suddenly learned of Hodges' potential testimony on the eve of trial. Had he made his attorney aware of the testimony Hodges might be expected to give, Hodges would have either been present on the date set for trial, or a satisfactory reason for his absence given. Furthermore, such information would have permitted the appellant's attorney to prepare and file a proper affidavit at a time that would have permitted the state to controvert the statements therein contained, as it had a right to do under the statute. Appellant's reliance on the intervention of Detective Sparks, who expressly stated that he did not tell appellant that the case would not go to trial and did not indicate that appellant should not bring his witnesses to court on the trial date set, does not excuse his failure to communicate with his attorney. This information should have been passed on to his attorney much earlier than one week before the trial, when Sparks promised to intervene in seeking a postponement in behalf of appellant. We are unable to find any showing of abuse of the trial court's discretion.

Appellant's "motion to suppress evidence" related to the seizure of a clothes hamper, 15 cellophane packages containing marijuana and a cardboard box and 27 bags of marijuana. It was not made until after the evidence had been mentioned in the testimony, but before it was exhibited. The sole basis of the motion was that appellant's arrest was illegal. An in camera hearing held on the motion was upon the probable

cause for arrest. The court found that there was probable cause for the arrest "since [the police officers] saw a man walking around with a clothes hamper full of what appeared to be marijuana." The basic question is whether the officers conducted an unreasonable search in order to see marijuana in appellant's possession, because there was not probable cause for the arrest if they discovered this fact by a warrantless search.

Members of the narcotics division of the Little Rock Police Department were informed by Trooper Mullineaux of the Arkansas State Police that Kelley was in possession of 50 pounds of marijuana in Room 17 of the Howard Johnson Motor Lodge on South University Avenue in Little Rock. Acting pursuant to this information, which probably was hearsay, Detectives Best, Isom and Mize of the Little Rock Police Department went to the motel and set up surveillance on Room 17, which was located close to the top of the stairs. They stationed themselves in a meeting room next to the registration desk. They saw a pickup truck occupied by a driver and a passenger pull up to the window. The passenger identified himself to the desk clerk as Kelley and asked for the key to Room 17. The truck was then driven to a point near the room. The officers proceeded through the back door of the meeting room, directly facing Room 17. They started walking toward the room and saw Kelley get out of the green truck and go upstairs. They approached the bottom of the stairs and saw Kelley come out of the room with a box which he set down. As the officers started up the stairs, they saw Kelley come out of the room with a yellow clothes basket or hamper containing some plastic packages encasing green vegetable matter, readily visible to the officers, only six to ten feet away, through square openings in the clothes basket, the top of which was covered with a sheet. The officers identified themselves to Kelley, who stepped back and collapsed into a chair, setting the basket on top of the box he had earlier brought out of the room. Best laid back the sheet over the basket and saw the packages that filled the basket. Isom began to advise Kelley of his rights and Best slipped into the open door of the room, which was unruffled as if it had never been occupied. The officer took the basket off the box and lifted the box, finding it to contain "squeeze-lock" bags filled with the same type of vegetable matter. The driver of the

pickup truck was identified as David Hodges. Best testified that Kelley was arrested on the basis of what they had seen in the basket. He testified that he had previously seen marijuana on 50 to 75 occasions.

Detective Isom, who had worked for two years as a narcotics investigator, testified that he had seen marijuana approximately 150 times. He said that the material in the clothes basket appeared to be marijuana. As they approached Kelley, Isom said he could clearly see that it could be marijuana, and placed Kelley under arrest. The testimony of the officers was the only evidence on the subject but it is not contradicted.

Appellant argues that the "plain view" doctrine did not justify the arrest and accompanying search, because there were no exigent circumstances to excuse the officers from obtaining a search warrant, in spite of the fact that he simultaneously argues that the information obtained from Trooper Mullineaux was not sufficient probable cause for Kelley's arrest. The testimony in this record does not reveal sufficient evidence to have justified the issuance of a search warrant prior to the surveillance at the motel. Be that as it may, appellant's argument is based upon the erroneous premises that the "plain view" doctrine is not applicable in any case unless exigent circumstances justify a warrantless search or seizure and the discovery of evidence in plain view is inadvertant.

The observation of evidence in plain view is not a search, or to say the least, not an unreasonable one. A resulting seizure is not the result of an unreasonable search. Looking at what is in plain view, or not concealed is not a search, as prying into hidden places would be. *Edwards* v. *State,* 38 Wis. 2d 332, 156 N.W. 2d 397 (1968); *State* v. *Ashby,* 245 S. 2d 225 (Fla. 1971); *Alire* v. *People,* 157 Colo. 103, 402 P. 2d 610 (1965). See, *Gerard* v. *State,* 237 Ark. 287, 372 S.W. 2d 635. See also, *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). The basic test is whether the officer had a right to be in the position he was when the objects seized fell into his plain view.[1] In *Harris* v. *U.S.,* 390 U.S. 234, 88 S. Ct.

[1]See *Theriault* v. *U.S.,* 401 F. 2d 79 (8 Cir., 1968), cert. den. 393 U.S.,.1100, 89 S. Ct. 898, 21 L. Ed. 2d 792, reh. den. 394 U.S. 939, 89 S. Ct. 1201, 22 L. Ed. 2d 474; *Cox*

992, 19 L. Ed. 2d 1067, the United States Supreme Court said:

> Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. ***

See also, *State* v. *Ashby,* supra. It is not an unreasonable search for an officer to move into a position where he has a legal right to be and look for things he may have reason to believe will be seen. *State* v. *Ashby,* supra. Cf. *Durham* v. *State,* 251 Ark. 164, 471 S.W. 2d 527. Police officers in the performance of their duties may, without violating the constitution, enter into the common hallway of an apartment building or motel without a warrant or express permission to do so. *People* v. *Terry,* 77 Cal. Rptr. 460, 454 P. 2d 36 (1969), cert. den. 399 U.S. 911. See also, *Edwards* v. *State,* supra. The fact that it may be necessary for an officer to crane his neck, bend over, or squat, etc. in order to see what may thus come into his view, does not render the plain view doctrine inapplicable, if what he saw would have been visible to an equally curious passerby. *James* v. *U.S.,* 418 F. 2d 1150 (D.C. Ct. App. 1969).

We do not view the discussion of the plain view doctrine in *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), relied upon by appellant, to severely limit the doctrine where there is no intrusion by the police officers.[2] Furthermore, the majority opinion in that case emphasizes the fact that contraband was not involved there, citing *Ker* v. *California,* supra. Unlike the situation in *Coolidge,* the officers here did not know they would find marijuana or have any plan to seize it. They were simply engaged in a proper surveillance. And in any event, the seizure here was

---

v. *State,* 254 Ark. 1, 491 S.W. 2d 802, cert. den. 414 U.S. 923, 94 S. Ct. 230, 38 L. Ed. 2d 157; *Russell* v. *State,* 240 Ark. 97, 398 S.W. 2d 213; *Williams* v. *State,* 237 Ark. 569, 375 S.W. 2d 375, appeal dism., cert. den, *Turney* v. *Arkansas,* 381 U.S. 276, 85 S. Ct. 1457, 14 L. Ed. 2d 431. CF. *Freeman* v. *State,* 258 Ark. 617, 527 S.W. 2d 909.

[2]For a post-*Coolidge* reiteration of the Harris rule, see *United States* v. *Johnson,* 506 F. 2d 674 (8 Cir., 1974), cert. den. 421 U.S. 917, 95 S. Ct. 1579, 43 L. Ed. 2d 784.

38

under exigent circumstances. There is no reasonable doubt that taking the time to obtain a warrant after the officers saw what they did would have permitted the easy removal of the contraband.

In order to constitute probable cause for the arrest and seizure, it was not necessary for the officers to have a chemical analysis made, if from their experience and observation they had reason to believe that the substance viewed by them was marijuana. *Alire* v. *People,* 157 Colo. 103.

We find no error in the finding that there was probable cause for appellant's arrest and in the denial of the motion to suppress.

We agree. HARRIS, C.J., ROY and HICKMAN, JJ.