STATE of Arkansas *v.* Melvin Denver STOREY

CR 80-243                                             613 S.W. 2d 382

Supreme Court of Arkansas
Opinion delivered March 16, 1981
[Rehearing denied April 20, 1981.]

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellant.

*Kenneth C. Coffelt*, for appellee.

ROBERT H. DUDLEY, Justice. The appellee is charged by one information with committing three felonies. The trial judge granted a pretrial motion to suppress evidence on one of the charges, theft by receiving. The State brings this interlocutory appeal pursuant to Ark. R. Crim. P. 16.2 (d) and 36.10, Ark. Stat. Ann. Vol. 4A (Repl. 1977 and Supp. 1979).

The pretrial hearings were conducted in two parts. The first part, on September 10, 1980, developed the following scenario: About 4:10 a.m. on April 26, 1980, a state trooper saw a 1960 Chevrolet pickup truck with no license plate. The trooper stopped the truck and found that, in addition to no car license, appellee had no driver's license. In fact, he had no identification whatsoever. Later he claimed that he left his billfold at his garage. The trooper asked appellee to walk to the police car so that a vehicle license check could be run through a computer by using the police radio. The trooper knew the pickup was a 1960 model, but appellee told him it was a 1964 model. While walking back to the police car the trooper noticed a tiller sticking out of the tarpaulin which covered most of the bed of the pickup, and next to the tiller he saw a box with a Magic Mart tag on it. Appellee volunteered that he had purchased the items at a Magic Mart store and he was taking them home. He had no sales slip.

They then walked back to appellee's car, and because there was no license plate on the pickup, the officer opened the door to see if the truck had an inspection sticker. There was no inspection sticker, and in plain view was a pair of bolt cutters. While waiting on the radio report, the trooper asked if appellee cared if he looked at the other items under the tarpaulin. Appellee replied, "No, go ahead." About that

time the trooper received a radio message that appellee had no vehicle license. The trooper then radioed for a city policeman to investigate, and wrote out three traffic tickets, one for having no car license, one for having no driver's license and one for having no inspection sticker. The trooper did not arrest the appellee for the offenses now before us, but left him with the city policeman. With this proof the first hearing ended and the learned judge ruled, "The Court finds that the tiller was seen in plain view, that the box was seen with the Magic Mart name on it; that the defendant gave permission for the officer to look in the box; that the bolt cutters were in plain view." Further, "I find any statement the defendant made was voluntary."

The second part of the hearing was the testimony of the city policeman. He stated that he received the trooper's radio message to investigate at 4:10 to 4:12 a.m. and was at the scene by 4:15. The tiller and the Magic Mart boxes were in plain view. He could see that the I.B.M. cards on the Magic Mart boxes were not torn in half, the customary practice when sales are made in stores like Magic Mart. Within 5 to 10 minutes of his arrival, the city policeman placed appellee under arrest. Appellee then volunteered that he had purchased all the items in the pickup truck for $329.00, which the officer could see was a monetary impossibility. Appellee then said that he had been at his garage all night. The officer knew this was not true, as he had checked the garage twice that night and no one was there. It took about an hour more before a Magic Mart manager could be awakened, get dressed, come to the scene and determine from which Magic Mart the items were stolen. It was not until after the manager stated the goods had not been sold in the regular course of business that appellee was taken to the police station.

After this testimony the motion to suppress the evidence was granted. The basis for the suppression was because the police had held the appellee for longer than 15 minutes in violation of Ark. Stat. Ann. § 43-429 (Repl. 1977), our search and frisk statute.

The trooper was justified in stopping the appellee for not having a valid vehicle license. *Enzor* v. *State*, 262 Ark.

545, at 548, 559 S.W. 2d 148 (1977); *United States* v. *Cortez,*
__ U.S. __, 101 S. Ct. 690 (1981). He only issued traffic citations
and did not formally arrest the defendant. The city police-
man made the arrest on the charge now before us, and it is his
knowledge that gives or denies probable cause.

The policeman received the trooper's radio message at
4:10 to 4:12 a.m. and was on the scene by 4:15. Within 5 to 10
minutes of his arrival, he placed appellee under arrest. The
determination of probable cause must be made as of the time
of arrest.

At that time the policeman knew the time of morning,
that the appellee had no vehicle license, no driver's license,
no vehicle inspection sticker and no identification whatso-
ever. In plain view were bolt cutters and the new Magic Mart
merchandise which had I.B.M. cards not torn in half. From
prior police work he knew that similar stores tear these cards
in half when merchandise is sold. The trooper had told him
of the other items under the tarpaulin.

Based upon the totality of these circumstances, we hold
that the policeman had probable cause to arrest the appellee.
The policeman had a particularized and objective basis for
suspecting the appellee of having stolen property in his
possession.

A part of the evidence was in plain view. In *Kelley* v.
*State*, 261 Ark. 31, at 36, 545 S.W. 2d 919 (1977), we ex-
plained the rationale of the plain view doctrine.

The observation of evidence in plain view is not a
search, or to say the least, not an unreasonable one. A
resulting seizure is not the result of an unreasonable
search. Looking at what is in plain view or not
concealed is not a search, as prying into hidden places
would be. See, *Gerard* v. *State*, 237 Ark. 287, 372 S.W. 2d
635.

Detaining appellee at the scene after his arrest, rather
than in jail, was reasonable under the circumstances. The
only testimony before us on this subject is that of the

policeman. He testified that he arrested appellee within 15 minutes and stayed at the scene to wait on the Magic Mart manager. Understandably, it takes some time at 4:15 a.m. to find the store manager, awaken him, wait for him to dress, and allow sufficient time for him to drive to the scene to identify the goods.

The trial judge relied on the 15-minute time limit, the search and frisk statute, Ark. Stat. Ann. § 43-429. The search and frisk statute is not a limitation on our statutory and common law provisions concerning arrest, plain view or search and seizure. Rather, it is in addition to them. A subsequent section of the search and frisk act, Ark. Stat. Ann. § 43-435 provides:

Stop and search distinct from right to arrest — Grounds to reasonably suspect —

(a) The right to stop provided in the new law [§§ 43-429 — 43-436] in no way changes the previously existing authority of an officer to make an arrest without an arrest warrant. The new rights to stop and to search, as defined in the new law, are separate and distinct from the established right to arrest, as provided by existing law, and to make a complete search incident to such arrest.

We find the arrest and the seizure valid.

Reversed and remanded.

ADKISSON, C.J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. It is admitted that the appellee was held for more than an hour, on a public highway, during which time the officers attempted to find some charge to lodge against him. Appellee was left with the Little Rock city officers after a state policeman had stopped and ticketed him for having no license plate on his vehicle, no driver's license with him, and no inspection sticker. The state officer noticed that the appellee had a rather large

quantity of new merchandise under a tarpaulin in the back of the truck. The obvious reason for calling in the city officers was to allow them to determine whether the goods on the pickup truck were contraband. By the most conservative estimate of anybody involved, the appellee was detained for more than one hour before it was determined that the merchandise on his vehicle was probably stolen.

It appears to me that we have a case which is controlled by Ark. Stat. Ann. § 43-429 (a) (Repl. 1977) which states:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person whom he reasonably suspects is committing, has committed, or is about to commit a felony, if such action is reasonably necessary to identify or determine the lawfulness of such person's conduct. An officer acting under this section may require that person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes, at the end of such period the person detained shall be released without further restraint, or arrested and charged with a crime.

We have almost identical language set out in Rules of Criminal Procedure, Rule 3.1. This rule also puts a 15 minute limit on the time which a person may be held by an officer. Also, Rule 4.1 (a) and (d) states:

> (a) A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed

> (i) a felony;

> * * *

> (d) A warrantless arrest by an officer not personally possessed of information sufficient to constitute reasonable cause is valid where the arresting officer is instructed to make the arrest by a police agency which

collectively possesses knowledge sufficient to constitute reasonable cause.

It cannot be seriously argued that the appellee was not detained for a period much longer than that which is authorized by rule or statute. In order to hold him for longer than 15 minutes, the officer must have some justification. It is somewhat more apparent at this time that the articles on the truck, which were in plain view, were probably stolen. However, even that has not been proven. Certainly the detaining officer had no information that the items had been reported stolen.

The chief reason for holding the appellee in this case was that the arresting officer, who formerly did guard work for Wal-Mart, stated that computer cards on merchandise were torn in half by Wal-Mart employees when the items were sold. The computer cards in the present case were not torn in half; however, the goods did not come from Wal-Mart. The goods apparently came from Magic Mart, and the officer had never worked at a Magic Mart. The main reason appellee was held is that the officers had a "suspicion" that all was not well. This is simply not enough to hold a citizen in the United States. There must be reasonable cause to detain a person.

There is absolutely no dispute that the state trooper was initially justified in stopping this vehicle and in citing the appellee for violations in connection therewith. Neither is it disputed that the evidence was at least partially in plain view. However, plain view is not enough. As was stated in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971), the plain view doctrine applies if (1) the initial intrusion resulting in the plain view was lawful, (2) discovery of the object was inadvertent, and (3) the incriminating nature of the object was immediately apparent. To say that a rotor tiller or a record player is of an immediately incriminating nature is folly. These items could be of an incriminating nature if a theft of the items had been reported. However, in the present case the police routed out the manager of every Magic Mart store in Little Rock and North Little Rock before finding one who tentatively identified the items as coming from his

store and who stated he did not believe the items were sold. No store was burglarized, and nothing in the record negates the fact that these items could have been sold without the knowledge of the store manager. There is no evidence that Magic Mart even tears the computer cards in half after the merchandise is sold.

The plain view doctrine does not mean that just anything which is in plain view is subject to seizure. For example, an automobile is obviously in plain view when it drives past a police car stopped for the purpose of using his radar gun on passing motorists. However, it is not enough to allow the officer to disengage from his important function and arrest the driver of the car, unless the officer had in his possession information that a car fitting that description had been stolen. Only then would he be justified in stopping the driver of such vehicle for a period not to exceed 15 minutes.

The majority seem to completely ignore the case of *Smith* v. *State*, 265 Ark. 104, 576 S.W. 2d 957 (1979). In *Smith* the officers went to Smith's house to arrest him on a hot check charge. After arriving at his residence they saw a Magnavox color television set which fit the description of one which had recently been reported stolen. They happened to have in their possession the serial number of the stolen Magnavox. Upon inspecting the one in Smith's residence, they discovered the number matched the one on the report of the stolen television set. He was arrested for having the stolen Magnavox in his possession. The trial court found the search lawful and admitted the Magnavox into evidence. Smith was found guilty of theft by receiving. On appeal, we discussed the plain view doctrine, citing *United States* v. *Johnson*, 541 F. 2d 1311 (8th Cir. 1976). In reversing the trial court we stated:

It was admitted that none of the items appear to be incriminating by their nature; they were stock items available to consumers throughout commerce. Certainly there was no inadvertent discovery. The initial intrusion could only be lawful if consent was given.

The detention in this case makes a shambles of the Fourth Amendment to the Constitution of the United States. The decision justifies any type search or seizure so long as the result turns out right. I cannot under any circumstances subscribe to this theory of the law.