Robert Richard HEFFERNAN *v.* STATE of Arkansas

CR 81-82                                      645 S.W.2d 666

Supreme Court of Arkansas
Opinion delivered February 7, 1983

*Andrew L. Clark,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. A jury convicted appellant of capital felony murder [Ark. Stat. Ann. § 41-1501 (1) (a) (Repl. 1977)] and fixed his punishment at life imprisonment without parole. The state adduced evidence that the victim, a fourteen year old girl, was abducted from a laundromat in Benton, Arkansas, raped and shot four times on February 3, 1980. The body was discovered the next day near Benton. The appellant, along with a man named Joseph Michael Breault and two women, all transients, camped at a park near Benton on February 2 and left on February 5, though they had originally paid to stay through February 6. One of the women testified that the appellant and Breault were armed but they disposed of the guns. A .357 Magnum, owned by the appellant, was subsequently retrieved from a lake. Ballistics tests demonstrated that this was the weapon from which the fatal bullets were fired. Glitter and hair were found on pants in the truck driven by the appellant and Breault, matching glitter and hair found on the clothing of the deceased. Appellant and Breault were later arrested in Colorado. The appellant does not challenge the sufficiency of the evidence. His court appointed cousel raises two points for reversal. We affirm.

Appellant first contends that the trial court erred in refusing to conduct a sequestered voir dire. He requested

that the court, in the exercise of its discretion, allow him to question each prospective juror individually during a sequestered voir dire inasmuch as the state was seeking the death penalty. The court refused the motion. However, he did permit individual voir dire. A.R.Cr.P., Rule 32.2. Appellant argues that if he had been allowed to interview the jurors privately the jurors would have answered questions more candidly about their knowledge of the case based on pretrial publicity, their past experiences as crime victims and their opinion of the death penalty. He alludes to only one instance in support of this argument; i.e., venireman Lawrence stated that he had not formed an opinion about capital punishment before the voir dire began, because he had not thought about it or had to make that decision. He wasn't sure what his opinion would have been if he had been the first juror questioned. However, he had decided that he believed in it under certain circumstances. The appellant did not receive the death penalty; therefore, he was not prejudiced by this recited occurrence. *Hobbs* v. *State,* 277 Ark. 271, 641 S.W.2d 11 (1982); and *Van Cleave* v. *State,* 268 Ark. 514, 598 S.W.2d 65 (1980). In his sequestration motion appellant acknowledges, as indicated, that sequestration of the jury for voir dire purposes is within the trial court's discretion. In the circumstances we cannot say that appellant has met his burden of proof by demonstrating an abuse of that discretion.

The appellant next asserts that the trial court erred in denying his motion on the day of trial for a continuance. He premises this argument upon the asserted failure of the prosecution to comply with the court's discovery order, contending, therefore, that he was entitled to a continuance pursuant to A.R.Cr.P., Rule 19.7, which provides that the trial court may, *inter alia,* grant a continuance for noncompliance with the court's order. A.R.Cr.P., Rule 17.1 (d) requires that the prosecution "shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor."

Appellant first argues that he did not receive copies of certain lab reports until the day of the trial. However, the prosecutor himself did not receive the written reports until the day of the trial. It appears, however, that the analysis of the materials to be tested was made known to defense co-counsel by the prosecutor ten days before trial, at which time defense counsel responded, "Well, that doesn't seem like that's any problem." The lab did not have the final results until the weekend before the trial. Defense counsel were informed of the final results by phone at that time. The prosecutor, himself, did not receive the written reports until the day of the trial, and they were promptly given to the defense counsel. Admittedly, the delay was not the "fault" of the prosecutor.

Secondly, appellant argues that the prosecution did not furnish the defense with a copy of a letter dated November 10, 1980, from a prosecutor in Colorado to the local prosecutor allegedly giving the name and address of a psychiatrist there to whom Breault, who accompanied the appellant on the date of the Arkansas murder, had confessed that he had killed the victim, reciting the facts and circumstances. Appellant's present counsel with co-counsel were substituted as appointed counsel on February 11, 1981. Trial date was set for April 27, 1981. The appellant argues that the prosecution had possession of the letter from the Colorado prosecutor and had refused to produce a copy of it which prevented the Colorado psychiatrist from being timely subpoenaed by the defense. In response, the prosecutor stated to the court that his entire file, including the letter, had been made available to the defense in compliance with the court's discovery order. Furthermore, appellant's counsel acknowledged to the court that "[i]n looking through the files sometime back" counsel had discovered a letter from the Colorado prosecutor to the Arkansas prosecutor. Further, defense counsel filed a petition for a writ of prohibition in this court on April 27, 1981, the day of trial, and attached thereto a letter dated November 10, 1980, from the Colorado prosecutor making reference to the psychiatrist's report. This certainly verifies the statement that he had discovered the letter in his files prior to the trial. The letter, *inter alia,* referred to the existence of the Colorado psychiatrist reports

on appellant and Breault following their apprehension there on local charges. It was stated in the letter that Breault had admitted committing the alleged Arkansas offense. The prosecutor steadfastly maintained that the defense had been furnished a complete copy of its file, including the letter and, therefore, he had complied with the court's discovery order.

No effort was made to contact the Colorado psychiatrist until a few days before the trial date. As we have said, a defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation. *Thomerson* v. *State*, 274 Ark. 17, 621 S.W.2d 690 (1981). Here, there is no showing of a purposeful or willful violation of the discovery order. Further, the prosecution represented to the trial court that it had promptly obeyed the court's discovery order. The defense maintained that it had not. The action of the trial court in denying a motion for continuance will not be reversed in the absence of a showing of such a clear abuse of the court's discretion as to amount to a denial of justice, and the burden rests upon appellant to show that there has been such an abuse. *Kelley* v. *State*, 261 Ark. 31, 545 S.W.2d 919 (1977). Here, it is not demonstrated that the trial court, in resolving the issue, clearly abused its discretion in denying the motion for a continuance which was based upon the asserted failure of the prosecutor to comply with the court's discovery order.

We have reviewed the record and all objections decided adversely to the appellant pursuant to the requirement of Supreme Court Rule 11 (f), Ark. Stat. Ann. Vol. 3A (Repl. 1979), and find no prejudicial error.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I do not understand the reasoning behind the majority opinion any more than I understand the refusal of the trial court to allow individual sequestered questioning of proposed jurors. I recognize it takes time and expense to try a criminal case but it just so

happens that both the Arkansas and Federal Constitutions provide for just that. In most cases the accused is a resident and citizen of the nation and many times of the state in which he is brought to trial. Therefore, such a person, being one of the people with whom the reserved power to change our laws lies, is entitled to due process and equal protection under the law. The right to trial by an impartial jury is one of the basic rights guaranteed to the people. Anything less is unacceptable. One needs but to read the majority opinion to see that the jury in this case was chosen in manner so as to allow potential jurors to be persuaded by questions put to the members of the panel being examined prior to them. The record is even more clear in regard to this point. The example of juror Lawrence, as cited in the majority opinion, is proof that at least one member of this particular jury panel changed his mind in listening to the examination of those questioned before him. I must ask: is a few more hours to process the panel too high a price to pay in order to provide an individual the basic rights guaranteed by our Constitutions? I think not. More often than not the price of expediency is the cost of a new trial. In such an instance not only the accused but the state and its people are the losers. In the present case the jurors took the witness stand and were questioned one at a time. The same procedure could have been followed by having voir dire conducted in the trial court's chambers. The right to a trial by an impartial jury is the most priceless safeguard of individual liberty. *Irvin* v. *Dowd*, 366 U.S. 717 (1961).

I am of the opinion that fundamental fairness required a continuance when the state crime lab report made its first appearance on the date of the trial and a statement reflecting that another party had confessed to the crime for which appellant was being tried showed up shortly before. This most heinous and brutal crime occurred on February 3, 1980. The appellant was charged with the commission of this crime on May 7, 1980. An attorney was appointed to represent the appellant prior to December 15, 1980, because it was on that date a motion was filed and an order of commitment to the state hospital issued. On January 5, 1981, an attorney representing the appellant filed a standard discovery motion pursuant to A.R.Cr.P., Rules 17 and 19.

The record does not show that this information was ever furnished to the appellant. The court entered an order on January 22, 1981, requiring the appellant to furnish the state certain information regarding reports and other information set out under A.R.Cr.P., Rule 18. On February 11, 1981, the present attorneys were substituted for the original attorney. A motion was filed by the state on March 2, 1981, requesting discovery of the nature of any defenses and names and addresses of witnesses. On the same date a second order was entered requiring appellant to furnish the state with the usual discovery information. A motion for discovery of possible aggravating circumstances was filed by the appellant on March 26, 1981. On the same date a motion in limine was filed objecting to the use and introduction of certain photographs at the trial. A motion for continuance was filed by the appellant perhaps on the same date. I am unable to read the filing date. The court denied the motion for continuance at the omnibus hearing which commenced on April 6, 1981, and was continued to April 23, 1981. The state promised to furnish the results of tests from the crime lab to the appellant in advance of the trial. The written report from the crime lab was not delivered to counsel for appellant until the morning of the trial. On that same day appellant filed a motion for further discovery and for a continuance, based on the fact that the report was not received until that day. Appellant's attorneys first learned of the contents of the crime lab report from a telephone conversation at noon on Saturday, April 25, 1981.

Appellant further contended that the state had information which would tend to exculpate him. This was a letter dated November 10, 1980, from a prosecuting attorney in Colorado. The letter contained information that a man named Breault had admitted to an unnamed psychiatrist that he had committed the crime for which appellant was being tried. The state contended this information had been furnished to the original attorney but there was no contention that it had been furnished to the present attorneys. Appellant stated that the prosecutor refused to produce a copy of the psychiatrist's report. In any event, appellant's counsel did not make contact with the psychiatrist until just before the trial date, at which time he said it would be

impossible for him to rearrange his schedule to appear at trial as scheduled. If necessary material is not furnished, it matters little to the accused whether it was the state or someone else who failed to furnish it. It matters only that he did not get it. Appellant came to this court asking for a writ of prohibition on the day of trial and it was denied. Trial commenced on Monday, April 27, 1981, and was finished on April 29, 1981.

I must disagree with the majority's statement that the appellant's attorneys had this information ten days before trial. I am of the opinion that appellant's attorneys used due diligence and that appellant was entitled as a matter of right to a continuance. It may have been indicated that the state's attorney was not at fault for the delay but it does not matter because the information was in possession of police officers which is considered possession of the prosecuting attorney. *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979). It is true that the matter of a continuance is generally a matter within the sound discretion of the trial court. However, we stated in *Thrasher* v. *State*, 270 Ark. 322, 604 S.W.2d 931 (1980), that the defense counsel was entitled to all material information in sufficient time to permit counsel to make beneficial use thereof. In *Thrasher* the state depended upon the fact that it had furnished the information to co-counsel for appellant. However, we held that the trial court abused its discretion in failing to grant a continuance when the information had not been received three days before the trial. We had the same problem in *Williams* v. *State,* supra, and *Williamson* v. *State,* 263 Ark. 401, 565 S.W.2d 415 (1978). In *Williamson* the state's attorney deliberately failed to make a disclosure on the theory that the accused was not entitled to some of the material. This material included a taped recording of a conversation which the accused had with investigators. In passing upon the question we stated:

> We are persuaded that Rule 17.1 imposes a duty upon the state to disclose to the defense counsel, upon a timely request, all material and information to which a party is entitled in sufficient time to permit his counsel to make beneficial use thereof. Any interpretation of Rule 17.1 to the contrary would indeed make a farce of a

rule which has as its purpose to reduce delays during trial and taken as a whole lending more conclusiveness and completeness in the disposition of criminal cases and disclosure, indeed, alleviates docket congestion and permits a more economical use of judicial resources.

In *Williams* we held that the failure of the prosecuting attorney to timely furnish evidence pursuant to a discovery motion required the exclusion of the evidence or a continuance. As I view the facts in the present case, there is a clear abuse in the failure to grant the continuance. What could be more important to an accused than to have information before the jury that someone else had admitted committing the crime for which he was being tried?

The majority correctly states one rule regarding the granting of a continuance being within the sound discretion of the trial court. However, the *Kelley* case setting forth the rule did not complete it, the next sentence being:

> Absent a showing by the moving party that he has exercised due diligence, the trial court will not be held to have abused its discretion in refusing to grant the motion.

*Figeroa* v. *State*, 244 Ark. 457, 425 S.W.2d 516 (1968). There has in this case been a showing that the moving party exercised due diligence.

I would like to respond to the oft repeated statement of the majority in regard to the *Witherspoon* doctrine that "the appellant did not receive the death penalty; therefore, he was not prejudiced by this recited occurrence." I recognize that we have said this many times but upon reflection it occurs to me that the statement is not true. The appellant has indeed suffered the prejudice which he claims is forced upon him by the *Witherspoon* doctrine. The argument is based upon the allegation that a death qualified jury is more apt to *convict* than a jury not so qualified. Therefore, the statement by the majority would apply only to the penalty stage and not to the guilt or innocence stage of the trial.

It is my sincere opinion that the appellant has been denied due process. It does not matter that he may be guilty of the crime for which he is charged. We cannot rightfully say this is so until he has had a fair trial by an impartial jury and due process of law. Unless these criteria are met, I will always insist that the case be retried.