**Robert Richard HEFFERNAN, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Dept. of Correction, Appellee.**

No. 86–2286.

United States Court of Appeals, Eighth Circuit.

Submitted June 8, 1987.

Decided Dec. 14, 1987.

William L. Howard, Jonesboro, Ark., for appellant.

William F. Knight, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before LAY and HEANEY, Circuit Judges, and ROSENN *, Senior Circuit Judge.

HEANEY, Circuit Judge.

Robert Heffernan appeals the district court's dismissal of his petition for a writ of habeas corpus. We remand the matter to the district court.

* The Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, sitting     by designation.

## I. BACKGROUND

On April 29, 1981, an Arkansas state jury found Heffernan guilty of capital felony murder and fixed his sentence at life without parole. A co-defendant, Michael Breault, was charged with the same offense but was tried separately. Heffernan appealed his conviction to the Supreme Court of Arkansas on the ground that the trial court erred in refusing to grant a continuance.[1] Heffernan alleged the continuance was necessary to allow him to call as a defense witness a psychiatrist who had prepared a report and who would testify that the co-defendant, Breault, had confessed to the murder during the course of treatment. In addition, Heffernan argued that the continuance was necessary to analyze a crime lab report the prosecution had failed to provide until the morning of trial. The conviction was affirmed by the Arkansas Supreme Court. *Heffernan v. State*, 278 Ark. 325, 645 S.W.2d 666 (1983).

Heffernan then brought a habeas corpus petition in federal district court. The federal district court dismissed the petition without a hearing, finding that the Arkansas Supreme Court had determined that the prosecutor had made his entire file available to the defense and that this file contained a letter from a prosecutor in Colorado alerting the defense to the psychiatrist's testimony. In light of this finding, the court determined that the state court did not violate Heffernan's constitutional rights by failing to grant a continuance. In addition, the district court relied on the Arkansas Supreme Court's finding that defense counsel had been informed of the results of the crime lab tests before trial and that any delay in furnishing the report was not the fault of the prosecutor. Therefore, the district court found that Heffernan's constitutional rights were not violated by the refusal to grant a continuance on the basis of the crime lab report. Heffernan appeals.

## II. THE PSYCHIATRIST'S REPORT AND TESTIMONY

The genesis of the dispute over the report and the potential testimony of the psychiatrist is found in a November 10, 1980, letter from a Colorado prosecutor to the Arkansas prosecutor responsible for Heffernan's case.[2] The letter stated in part:

> My impression of these two men [Heffernan and Breault] is that Mr. Heffernan is the by-stander and Mr. Breault is the actor. In our case of First Degree Sexual Assault and Kidnap it appears that Mr. Breault was the main force and the actual participant in the actual sexual assault and Mr. Heffernan was there to assist Mr. Breault and to drive the truck. [Heffernan], however, did not participate in the sexual assault itself and actually may have prevented Mr. Breault from killing the victim in our case.
>
> *I have also received psychiatric reports on each of these men. In those psychiatric reports, Breault has admitted to the killing of the girl in Arkansas.* [Emphasis added.]

The letter did not give the psychiatrist's name or address.

On January 5, 1981, Heffernan's attorney filed a discovery motion requesting any material information within the knowledge or possession of the prosecuting attorney tending to negate the guilt of the defendant or to reduce the punishment. The prosecutor states that, in response to the request, he copied everything in his file and sent the copies to Heffernan's original counsel.[3] The record does not reveal the

---

1. Heffernan also appealed on the grounds that the state trial court erred in (1) allowing a "death qualified jury" and (2) failing to sequester the jury to allow individual voir dire examination. Both issues were raised in the petition to the district court, but are not being pursued in this appeal.

2. The Colorado prosecutor was involved because after the events leading to Heffernan's

Arkansas conviction had occurred, he and Breault traveled to Colorado where they were arrested in connection with a rape. In exchange for testifying against Breault and waiving extradition to Arkansas, Heffernan was sentenced to probation on the Colorado charge.

3. Heffernan has been represented by three different attorneys relevant to this appeal. The first, who withdrew before trial, will be referred

date the file was copied or whether anything was subsequently placed in the file. On February 11, 1981, Heffernan's attorney withdrew from the case and sent the copy of the prosecutor's file to substituted counsel.

The state trial court record discloses that at some point after commencing work on the case, Heffernan's substituted counsel noticed the letter from the Colorado prosecutor in the file. It also indicates that on April 17 or 18, 1981, he contacted Heffernan's Colorado defense attorney to obtain a copy of the psychiatrist's report. On April 24, 1981, Heffernan's substituted counsel obtained the name of the psychiatrist.[4] On April 26, the day before the trial was scheduled to begin, Heffernan's trial counsel contacted the psychiatrist, only to find that he could not testify on April 27, be-

to as "original counsel." The second, who served at least through the state court trial, will be referred to as "substituted counsel" or "trial counsel." The third, who represented Heffernan in the instant appeal, will be referred to as "appellate counsel."

4. In the motion for a continuance filed with the state trial court, Heffernan's attorney states that the name of the psychiatrist was Dr. Arthur C. (Bob) Roberts, a psychiatrist at the Colorado State Hospital.

5. With respect to the psychiatrist's report, the state trial transcript contains the following exchange:

Mr. Madden [lead counsel for the defense]: Are you saying that you have a report from the psychiatrist?

Mr. Alsobrook [lead counsel for the prosecution]: I don't know.

Mr. Madden: Did you get a report?

Mr. Alsobrook: I don't know. I don't know if I've got one from this guy or not.

The court: What's his name?

Mr. Alsobrook: But you've got everything in my file.

Mr. Madden: Richards, I believe is his name. Dr. Bob Richards.

Defendant: Dr. Roberts.

Mr. Alsobrook: Here's a Roberts.

Mr. Madden: On Breault?

Mr. Moudy [prosecution co-counsel]: No. Heffernan.

Mr. Madden: Well that's what I'm talking about.

Mr. Moudy: Yes, here it is right here.

Mr. Madden: I don't have a report on Breault.

Mr. Moudy: What about on Heffernan?

cause he had to appear in two trials in California.

Heffernan's trial counsel brought the matter to the attention of the trial judge in a motion for a continuance. The prosecutor opposed the motion contending that trial counsel had notice of the existence of such evidence well in advance of trial by virtue of the letter from the Colorado prosecutor dated November 10, 1980, and should have attempted to secure the evidence before the morning of trial. When questioned whether his office had received a copy of the report or whether a copy of the report had been given to the defense, the prosecutor responded that he was uncertain, but he understood that a copy of the entire file had been made available to original counsel and forwarded to substituted counsel.[5]

Mr. Madden: I have Heffernan's but I don't have Breault's.

Mr. Moudy: Well, they're all right here together.

Mr. Madden: We don't have a copy of this, Your Honor.

State trial transcript at 113–115.

Thus, it appears that the psychiatrist's report was in the courtroom in the prosecutor's file on the day of trial. Despite this fact, the parties agree that the report was never made part of the state trial record. Moreover, the report has remained elusive. As defense counsel stated to this Court at oral argument:

The Court: Just so we're clear on this. The psychiatric report is not now before us. You have been unable to find it and there has never been an evidentiary hearing at which the defendant's counsel in the state trial was called and asked whether or not he had in fact received that. That all we have is the general statement that the file was open.

Counsel: That's correct.

The Court: We don't have anything more at the federal district court level as to whether or not that psychiatric report was in that file?

Counsel: I think that's correct. The only thing that you do have is the morning of trial when they had this colloquy involving the prosecutor and defense counsel. Towards the end of that colloquy, the defense counsel asked the prosecutor, "Do you have the report?" And his reply on two occasions was, "I don't know, but if I've got it, you must have it because I gave you my entire file." There was some more colloquy ...

The Court: Why did he ask that question if he had the report?

Counsel: That's the position I take. Because it apparently turned up that day but it

After some additional discussion, the state trial judge brought an end to the matter holding that, although it was impossible to determine whether the state had an obligation to produce the report or whether the state had, in fact, produced it, the issue need not be resolved because any statements by Breault to the psychiatrist would be inadmissible as either hearsay or privileged.[6] Heffernan's trial counsel objected to the ruling.

On appeal, Heffernan argues that the state trial court's refusal to grant a continuance to allow time to secure the testimony and report of the psychiatrist, was so fundamentally unfair as to violate his constitutional rights. He points out that the psychiatrist's report or testimony could be material either to guilt or punishment. Therefore, he contends that the prosecutor could have a duty to produce the evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In addition, Heffernan argues that fundamental fairness requires that a defendant be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). He contends this opportunity was denied him by the prosecution's failure to comply with a valid discovery request and the court's failure to allow him time to secure the psychiatrist's testimony.

The prosecution responds that the defense failed to present the psychiatrist's report or testimony as a result of trial counsel's failure to exercise due diligence with respect to the evidence, and thus, the state trial court did not abuse its discretion in denying the motion for a continuance. *See Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984). Additionally, the prosecutor contends that Heffernan was not prejudiced by the state trial court's ruling because the disputed evidence would not have benefited Heffernan. At best, it would have shown that Heffernan was only an accomplice to the murder and, because Arkansas law makes no distinction between the criminal responsibility of an accomplice and the person who actually commits the offense, the material is not exculpatory and withholding it would not prejudice Heffernan. *Cf., e.g., Redman v. State*, 265 Ark. 774, 580 S.W.2d 945 (1979).

A federal court reviewing a state court conviction under 28 U.S.C. § 2254 must accord state court findings a "high measure of deference." *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982). We do so here but nevertheless hold that the district court erred in relying on the findings of the Arkansas state courts instead of holding an evidentiary hearing with respect to the psychiatrist's report and testimony.

The diligence of Heffernan's trial counsel in seeking to obtain the psychiatrist's report or testimony was never squarely addressed by the state courts. With respect to production of the report, the state trial court apparently held that the motion for a continuance should be denied because the defense failed to show that it did not receive information it should have had.[7] On

---

was never made part of the record. I think that morning of trial somebody did have it. At least that's the way I read the transcript. Despite repeated requests by this Court, neither party has been able to produce a copy of the report.

**6.** The judge stated:

It would be an obligation of the State to furnish the defense a copy of the that report if it included anything that could be exculpatory. It apparently is the prosecutor's word against the defense attorney's word. We have no record of the disclosure. So, it is impossible for me to rule whether you did or did not receive it or should or should not have had it. But I'm going to rule at this time that at least for the guilt stage of the trial that any such

statement by the psychiatrist regarding anything Breault may have told him about any aspect of the case would be inadmissible.

\* \* \* \* \* \*

\* \* \* I'm going to rule that in the event the psychiatrist were here, I would not allow him to testify that Breault told him he was the person who actually murdered the victim on the basis of hearsay. As well, I'm sure, on the basis of privilege, unless Breault waived the privilege.

State Trial Transcript at 115, 117–18.

**7.** The court stated:

I'm going to rule that the motion for a continuance should be denied because it hasn't sufficiently been shown that you [the

appeal, the Arkansas Supreme Court addressed only the issue whether the prosecutor furnished the defense with a copy of the November 10, 1980 letter which refers to the report.[8]

The prosecution contends that Heffernan cannot object to the state trial court's denial of a continuance because his trial counsel did not attempt to secure the psychiatrist's report and testimony until less than two weeks before trial. Certainly, as the Arkansas Supreme Court pointed out in this case, "a defendant in a criminal case cannot rely upon discovery as a total substitute for his own investigation." *Heffernan v. State*, 278 Ark. 325, 645 S.W.2d 666, 668 (1983) (citing *Thomerson v. State*, 274 Ark. 17, 621 S.W.2d 690 (1981)).

Nonetheless, the fact remains that the report was the subject of a valid discovery request. Moreover, if, as the November 10 letter seems to indicate, the report contains evidence favorable to Heffernan and material to either guilt or punishment, the prosecution had a duty to make it available to the defense within a reasonable time after

obtaining it. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *cf.* Ark.Stat.Ann. § 43–2011.2(b) (court may order the prosecution to permit the defense to copy documents in the possession of the prosecution which are material to the preparation of the defense).

The prosecution also argues that by making its file available to the defense, it complied with any discovery request that had been made. In addition, the prosecution contends that since it made its entire file available to the defense, the burden should rest with the defense to show that the prosecution had the report in its possession and failed to produce it.[9]

The defense, on the other hand, argues that it is not sufficient for the prosecution to rely on the statement that it turned over its entire file. Moreover, the defense contends that it would not have asked for the psychiatrist's report on the first day of trial if it already had it. Finally, the defense contends that the state trial record establishes that the prosecution had the report in its possession at trial.

defense] didn't receive the information or shouldn't [sic] have had the information. State Trial Transcript at 117.

**8.** In its opinion, the Arkansas Supreme Court states:

Appellant argues that the prosecution did not furnish the defense with a copy of a letter dated November 10, 1980, from a prosecutor in Colorado to the local prosecutor allegedly giving the name and address of a psychiatrist there to whom Breault, who accompanied the appellant on the date of the Arkansas murder, had confessed that he had killed the victim, reciting the facts and circumstances. * * * The appellant argues that the prosecution had possession of the letter from the Colorado prosecutor and had refused to produce a copy of it which prevented the Colorado psychiatrist from being timely subpoenaed by the defense. In response, the prosecutor stated to the court that his entire file, including the letter, had been made available to the defense in compliance with the court's discovery order. Furthermore, appellant's counsel acknowledged to the court that "[i]n looking through the files sometime back" counsel had discovered a letter from the Colorado prosecutor to the Arkansas prosecutor. Further, defense counsel filed a petition for writ of prohibition in this court on April 27, 1981, the date of trial, and attached thereto a letter

dated November 10, 1980, from the Colorado prosecutor making reference to the psychiatrist's report This certainly verifies the statement that he had discovered the letter prior to the trial. The letter, *inter alia,* referred to the existence of the Colorado psychiatrist reports on appellant and Breault following their apprehension there on local charges. It was stated in the letter that Breault had admitted committing the alleged Arkansas offense. The prosecutor steadfastly maintained that the defense had been furnished a complete copy of its file, including the letter and, therefore, had complied with the court's discovery order.

*Heffernan v. Arkansas,* 278 Ark. 325, 645 S.W.2d 666, 668 (1983).

As we understand Heffernan's argument, however, the November 10, 1980 letter is not the document at issue. Rather, he contends that the prosecution had an obligation to furnish the psychiatrist's report referred to in the letter. The Arkansas Supreme Court's opinion does not address the issue whether either the prosecutor or Heffernan had possession of or access to the psychiatrist's report.

**9.** This Court finds the prosecutor's claims wholly untenable. In light of the care with which lawyers routinely handle files entrusted to their care, it defies belief that the prosecutor's office does not have a record of the contents of the file it turned over to Heffernan's original counsel.

■ Although the current record with respect to the psychiatrist's report is far from complete, several facts are abundantly clear. First, the report was the subject of a valid discovery request and is the type of evidence the prosecutor is required to produce under *Brady* and its progeny. Second, the transcript of the state court trial indicates that the prosecutor had a copy of the report in his possession on the morning of trial. Third, the report was never admitted into evidence at trial, has never been made part of the record on appeal, and cannot be located by defense counsel. Therefore, we remand the case to the district court with directions to hold an evidentiary hearing at which the parties shall supplement the record with respect to the failure to make the report timely available to the defendant and at which hearing the state shall be required by the Court to produce the report. After considering the report and any evidence introduced at the hearing, the court should address the question of the appropriate remedy in light of *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).[10]

In sum, the current state of the record simply leaves too many important factual questions unanswered with respect to the psychiatrist's report and testimony to determine whether the state trial court denied Heffernan his constitutional right to a fair trial by refusing his motion for a continuance.

## III. THE CRIME LAB REPORT

Heffernan also contends that he was denied his constitutional rights by the state trial court's refusal to grant a continuance because the prosecution failed to make a crime lab report available until the morning of trial. The lab report was crucial in establishing two points. First, it matched glitter on the shirt the murder victim was wearing at the time of her death with glitter found in the defendants' truck. Second, it matched animal hairs found on the victim's body and clothing with hairs found in the defendants' truck. Both of these points were important in connecting the victim with the defendants and in supporting the prosecution's theory that the victim was kidnapped and raped prior to her murder.

On January 5, 1981, Heffernan's counsel filed a discovery motion requesting "[a]ny reports or statements of experts ... including results of physical and mental examinations, scientific tests, experiments or comparisons." The evidence remained in the exclusive control of the State of Arkansas at the Arkansas crime lab for more than a year. At a pre-trial conference on April 6, 1981, the prosecution indicated it was having some difficulty getting the crime lab to perform requested tests and to return the results prior to the scheduled trial date. The judge responded that if the crime lab evidence was not back by the date of the next scheduled pre-trial hearing on April 20, Heffernan would not likely be tried on April 27 (the date the trial actually began).

On the morning of April 25, Heffernan's trial counsel contacted the prosecutor and was informed that the crime lab had results of its tests available and would give them to the defense verbally over the telephone. Heffernan's trial counsel then contacted the crime lab and was informed that

---

**10.** The prosecution argues that even if it had the report and had a duty to produce it, Heffernan was not prejudiced for two reasons. First, under Arkansas law, he still would have been liable as an accomplice to the murder. *See* Ark.Stat.Ann. §§ 41–302 –303 (1977). Whatever the merit of the government's statement of Arkansas law, without reviewing the report and without evidence concerning the probable testimony of the psychiatrist there is simply no way to accurately determine the probable effect of the evidence on the outcome of the case.

Second, the prosecution also contends that Heffernan was not prejudiced because the state trial court ruled that, were they available, both the report and the psychiatrist's testimony would have been inadmissible as hearsay or privileged. *See* State Trial Transcript at 117–18. To the contrary, Heffernan contends that both the psychiatrist's report and testimony would be admissible as statements against interest. *See* Ark.R.Evid. 804(b)(3). Further, with respect to privilege, Heffernan argues that it is not the function of the court to assert a privilege on behalf of a patient or physician.

Without a copy of the report at issue, this Court would be engaging in speculation were it to rule on the issue of its admissibility.

the results would not be favorable to his client.

On the morning of the day of trial, April 27, the actual written report on which the crime lab witness would testify was first made available to both the defense and the prosecution. Heffernan's trial counsel moved for a continuance in order to examine the methodology used in the tests and the conclusions drawn in the written report and to determine whether additional tests of the material would be worthwhile. The trial judge denied the motion.[11]

On appeal, the Arkansas Supreme Court apparently affirmed the trial court's ruling emphasizing that the delay in getting the results and written report to the defense was not the fault of the prosecutor.[12] The responsibility or good faith of the prosecutor is not, however, the issue. As Justice Purtle of the Arkansas Supreme Court stated in dissent in this case:

It may have been indicated that the state's attorney was not at fault for the delay but it does not matter because the information was in the possession of police officers which is considered possession of the prosecuting attorney.

*Heffernan v. State,* 645 S.W.2d at 670 (citing *Williams v. State,* 267 Ark. 527, 593 S.W.2d 8 (1980)).

In addition, it has long been recognized that an accused's right to due process and effective assistance of counsel requires adequate time for preparation and presentation of a defense. As the Supreme Court stated in *Powell v. Alabama,* 287 U.S. 45, 59, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932):

The prompt disposition of criminal cases is to be commended and encouraged.

But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob.

In *Hintz v. Beto,* 379 F.2d 937, 941–42 (5th Cir.1967), the court held that denial of a continuance violated defendant's constitutional rights where a psychiatrist's written report was not furnished defense counsel until the morning of trial despite the fact that counsel was informed of the results of the examination two days prior to trial. In addition, this Court has held that a defendant's rights to due process and effective assistance of counsel require adequate time to prepare a defense. See *Wolfs v. Britton,* 509 F.2d 304 (8th Cir.1975). Thus, if Heffernan was, in fact, prejudiced by being required to proceed with his defense despite receiving the crime lab report on the morning of trial, his constitutional rights were violated.

■ The question whether Heffernan was so prejudiced, however, is one that cannot be resolved on the current record in the case. The actual crime lab report was never introduced at the state trial or made part of the record in any subsequent proceeding. In addition, aside from a statement of the defense counsel regarding possible weaknesses in the report and its conclusions, the record does not reflect the prejudice, if any, to the defense from the denial of the continuance. Therefore, we remand to the district court to allow the parties, at the hearing to be held (*see* page

**11.** The trial judge stated:

As I recall, my last order was that you exchange information, including lab reports, as quickly as the information was available, and as I recall at the last hearing we were at, we discussed specifically these things and I asked Mr. Clark and you were there, too, Mr. Madden, if they felt like there was going to be any problem whatsoever with this information and the answer was no, they didn't feel like there would be any reason for a continuance, and I felt like you were aware at that time that there would be this information, that there would be these comparisons and

should have assumed that it would be favorable to the State, so I'm going to deny your motion for a continuance on that basis. State Trial Transcript at 109.

**12.** The court stated:

The lab did not have the final results until the weekend before the trial. Defense counsel were informed of the final results by phone at that time. The prosecutor, himself, did not receive the written reports until the day of the trial, and they were promptly given to the defense counsel. Admittedly, the delay was not the "fault" of the prosecutor.

1436 *supra* ), to present evidence of prejudice to the defense, or lack thereof, resulting from the state trial court's denial of a continuance for the defense to more fully examine and prepare a response to the crime lab report.

## IV. CONCLUSION

This appeal raises serious questions as to the constitutionality of the process utilized by the State of Arkansas in finding Heffernan guilty and imposing a sentence of life imprisonment without the possibility of parole. The incomplete state of the record, however, makes it impossible to rule on those questions. Therefore, we remand the case to the district court for further proceedings consistent with this opinion.