**Robert R. HEFFERNAN,**
**Plaintiff–Appellant,**

v.

**Larry NORRIS, Defendant–Appellee.**

**No. 94–1223.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Feb. 23, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied April 3, 1995.

Lewis W. Littlepage, Little Rock, AR, argued, for appellant.

Darnisa Evans Johnson, Little Rock, AR, argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Arkansas inmate Robert Heffernan appeals the denial of his third petition for a writ of habeas corpus, asserting that the involuntary administration of antipsychotic drugs deprived him of a fair trial. The district court[1] denied Heffernan's petition on the ground that the Supreme Court's recent decision in *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), does not excuse his procedural default and abuse of the writ. We affirm.

Heffernan was charged with the February 1980 rape and murder of a fourteen-year-old girl in Saline County, Arkansas. In December 1980, he was admitted to the Arkansas State Hospital ("ASH") for a mental competency evaluation. On January 14, 1981, Heffernan was discharged to the Saline County Sheriff after the ASH evaluators found him competent to stand trial and mentally responsible at the time of the crime. Two days later, he was readmitted to ASH after he attempted suicide in jail. He remained at ASH through his April 1981 trial except for "visits out" to the University of Arkansas Medical Center and to court for one hearing and the three-day trial.

1. The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas, who accepted the findings and recommendation of the HONORABLE H. DAVID YOUNG, United States Magistrate Judge for the Eastern District of Arkansas.

Heffernan did not assert an insanity defense at trial, nor claim that he was incompetent to stand trial, nor testify in his own defense. The jury convicted him of capital murder, and he was sentenced to life imprisonment without the possibility of parole. The Supreme Court of Arkansas affirmed. *Heffernan v. State*, 278 Ark. 325, 645 S.W.2d 666 (1983).

In 1986, Heffernan filed his first federal habeas petition in district court, raising a number of issues but not challenging the administration of antipsychotic drugs during his trial. After we remanded for an evidentiary hearing, *see Heffernan v. Lockhart*, 834 F.2d 1431 (8th Cir.1987), the district court conducted a hearing and dismissed the petition on the merits. We affirmed. *Heffernan v. Lockhart*, No. 89–2447, 923 F.2d 857 (8th Cir. Dec. 28, 1990).

Heffernan then petitioned the state court for a writ of habeas corpus, asserting that he was incompetent to stand trial and challenging the sufficiency of the evidence. The state court denied that petition, concluding that Heffernan had failed to state grounds for habeas relief under Arkansas law.

Heffernan then filed a second habeas corpus petition in the district court, asserting his incompetence at the time of trial. The district court dismissed this petition as an abuse of the writ, noting that "it is undisputed that [Heffernan] was aware of this ground during the pendency of his previous habeas corpus petition [and he] offers no adequate excuse for failing to raise the known ground in the initial habeas suit." We denied a certificate of probable cause and dismissed Heffernan's appeal. *Heffernan v. Lockhart*, No. 92–1536 (8th Cir. Apr. 1, 1992).

Heffernan then filed this third habeas petition, alleging for the first time that, while at ASH, he was involuntarily given antipsychotic drugs such as amitriptyline, chlordiazepoxide, doxepin, and perphenazine, and that the involuntary administration of these antipsy-

chotic drugs during trial violated his Sixth Amendment and Fourth Amendment rights as defined in *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). The district court dismissed this claim as procedurally barred—Heffernan never raised it in state court—and as an abuse of the federal writ. Heffernan appeals, arguing that *Riggins* articulated a new rule that should be applied retroactively under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and that this new rule excuses his procedural default and abuse of the writ.

■ A habeas petitioner may excuse procedural bar and abuse of the writ by showing cause and prejudice, or actual innocence. *See McCleskey v. Zant*, 499 U.S. 467, 489–94, 111 S.Ct. 1454, 1467–70, 113 L.Ed.2d 517 (1991). This appeal turns on the issue of cause, which the Supreme Court has defined generally as " 'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court" or in a prior habeas petition. *Id.* at 493, 111 S.Ct. at 1470. Cause may include "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Heffernan argues that his involuntary medication claim was both legally and factually unavailable until after the denial of his second habeas petition.

■ 1. In the district court, Heffernan argued that he did not know that involuntary medication violated his constitutional rights until the *Riggins* decision in May 1992. Legal unavailability may be cause excusing procedural bar or abuse of the writ, but the standard is a strict one—the constitutional claim must be "so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984); *Leggins v. Lockhart*, 822 F.2d 764 (8th Cir.1987).[2] Thus, we must

---

**2.** We note that this is a different standard than the one governing whether a case announces a "new rule" for purposes of *Teague v. Lane* retroactivity. *See* 489 U.S. at 301, 109 S.Ct. at 1070 (a new rule is one "not dictated by precedent existing at the time the defendant's conviction

became final"). We do not consider whether a Supreme Court decision could announce a "new rule," for retroactivity purposes, that was nonetheless reasonably available to counsel, for procedural bar/abuse of the writ purposes. *See Selvage v. Collins*, 975 F.2d 131 (5th Cir.), *cert.*

examine whether *Riggins* announced a novel constitutional doctrine.

In *Riggins*, a criminal defendant who had raised an insanity defense unsuccessfully moved to suspend administration of antipsychotic drugs until the end of his trial so that the jury could better evaluate his mental state. Defendant then testified at the trial. The Supreme Court reversed the conviction and remanded for a hearing to determine whether "antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of Riggins' own safety or the safety of others." 504 U.S. at ——, 112 S.Ct. at 1815. Absent such a determination, involuntary antipsychotic medication may impermissibly impair "constitutionally protected trial rights." *Id.* at ——, 112 S.Ct. at 1816.

The various opinions in *Riggins* identify two "constitutionally protected trial rights" that are implicated when the State involuntarily administers antipsychotic medication to a criminal defendant. The first—impairment of the defendant's right to present an insanity defense—is not even present in this case, because Heffernan did not claim insanity and did not testify. The second constitutional concern raised by the administration of antipsychotic medication to a criminal defendant is the danger that the defendant's demeanor in the courtroom during trial and ability to assist counsel with the defense will be prejudiced. *See Riggins*, 504 U.S. at ——, 112 S.Ct. at 1819–20 (concurring opinion of Justice Kennedy). This is the prejudice now claimed by Heffernan—that he was unable to fully assist counsel and unable to testify in his own defense because of the medication.

These are not "novel" constitutional issues, those that represent a "clear break with the past." *Reed v. Ross*, 468 U.S. at 18, 104 S.Ct. at 2911. Prior to *Riggins*, if the State involuntarily medicated an in-custody criminal defendant to the extent that presentation of an insanity defense was compromised, or the defendant was unable to cooperate in the defense and would present a bad image to the jury, trial counsel would know to object and to argue that a trial under such circumstances would not comport with due process.

The Supreme Court may not have considered these issues before *Riggins*, but both the issues and the Court's likely favorable response to those issues were reasonably anticipatable to competent trial attorneys.

Moreover, the constitutional issues discussed in *Riggins* were recognized and had been the basis for relief on appeal in a number of state cases decided before Heffernan's trial. *See In re Pray*, 133 Vt. 253, 336 A.2d 174 (1975); *State v. Murphy*, 56 Wash.2d 761, 355 P.2d 323 (1960) (en banc). In *State v. Maryott*, 6 Wash.App. 96, 492 P.2d 239 (1971), the court reversed a conviction, suggesting that heavily sedating a criminal defendant at trial is akin to bringing the defendant to court in shackles, a practice condemned, except when absolutely necessary, in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). And in *Commonwealth v. Louraine*, 390 Mass. 28, 453 N.E.2d 437, 444 (1983), a case factually similar to *Riggins* that was decided after Heffernan's trial but before his first habeas petition, the court held that involuntarily drugging a defendant who claimed insanity at trial violated the Sixth Amendment right "to present the defendant's version of the facts," a right applied to the States in *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). These cases confirm that the constitutional claim Heffernan raises was "reasonably available to counsel" at the time of his procedural defaults and prior habeas petitions.

"Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). Although the *Riggins* decision no doubt provided Heffernan with a new idea for his *pro se* habeas petition, we conclude that it was not a constitutionally novel decision that may excuse his procedural default and abuse of the writ.

■ 2. Heffernan also argued to the district court, and his appointed counsel urges

*denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 663 (1992).

on appeal, that the State withheld ASH records establishing the involuntary medication and did not tell Heffernan or his attorney what drugs were being administered both before and during the trial. This is cause excusing his abuse of the writ, Heffernan contends, because it was official interference that made the factual bases for his claim not reasonably available to counsel. *See Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645.

The State responds that the factual bases for this claim have always been available to Heffernan because he had first hand knowledge that he was being medicated, and his medical records were available to his counsel. We agree. Heffernan made no contemporaneous objection to the medication he was receiving. Trial counsel was surely aware that Heffernan was readmitted to ASH after trying to commit suicide. Because Heffernan's defense at trial was that he was innocent—that a fellow transient had borrowed his gun and committed the rape and murder—it is doubtful that Heffernan's attorney believed that having his client under antidepressant medication would prejudice the defense. Heffernan's assertion many years later that he was so heavily drugged that he could not testify and could not tell counsel how ASH was treating him is inherently preposterous. But even if true, it is also undisputed that Heffernan was under no medication when he filed his initial habeas petition; at a minimum, he should have raised the issue at that time, so abuse of that writ is not excused.

For the foregoing reasons, we conclude that Heffernan has failed to show cause for not raising this issue in his first two habeas petitions, and in the state courts. Heffernan does not contend that, but for this alleged constitutional error, "it is more likely than not that no reasonable juror would have convicted him," the other exception to procedural bar and abuse of the writ. *Schlup v. Delo*, —— U.S. ——, ——, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995). Thus, the district court properly denied his involuntary medication claim as procedurally barred and an abuse of the writ.

We have carefully considered the other issues that appointed counsel has vigorously raised on appeal. All must be rejected, either because they were determined adversely to Heffernan in the prior habeas proceedings, or because they were not raised and are procedurally barred and an abuse of the writ. The judgment of the district court is affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent. The principal issue on appeal is whether the district court can consider the merits of Heffernan's petition for a writ of habeas corpus. I have three points to make.

1. *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) controls our decision on this issue. Assuming the facts are as Heffernan contends they are, *Riggins* should apply to this case. Heffernan's essential claim, as was Riggins', is that the forced administration of antipsychotic drugs affected Heffernan's demeanor in front of the jury and his ability to communicate with counsel.

The majority seems to suggest, without deciding, that *Riggins* does not apply to the facts of this case because "Heffernan did not claim insanity and did not testify." Maj. op. at 334. While the majority correctly notes that *Riggins* had sought an insanity defense, the holding in *Riggins* was in no way limited by this factor. Instead, the decision was couched in more general terms, noting that "[i]t is clearly possible that such side effects impacted not just Riggins' outward appearance, but also the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel." 504 U.S. at ——, 112 S.Ct. at 1816. Although the magistrate judge in his findings and recommendations also noted "factual discrepancies" between the two cases, he, unlike the majority, assumed that *Riggins* did apply. *Heffernan v. Norris*, No. PB–C–93–419 at 5 n. 1 (E.D.Ark. Dec. 13, 1993) (findings and recommendation).

2. *Riggins* is a "novel" constitutional claim within the meaning of *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). Therefore, that Heffernan had not raised a *Riggins*-like claim in his

previous federal habeas petitions or in the state courts does not bar Heffernan from raising a *Riggins* claim in this subsequent petition for a writ of habeas corpus.

The majority contends that the constitutional concerns raised in *Riggins* were "reasonably available to counsel." However, as to a situation where insanity was not essential to the defendant's claim, the majority opinion cites only *State v. Maryott*, 6 Wash. App. 96, 492 P.2d 239 (1971), an intermediate appellate court in the state of Washington, to support this proposition. Maj. op. at 334. A review of several of this court's other *Reed v. Ross* decisions indicates that when the court makes a "no novelty" finding, the court at least can cite some appellate cases within the relevant jurisdiction. *See, e.g., Jones v. Lockhart*, 977 F.2d 444, 446 (8th Cir.1992) (Arkansas case relying on Arkansas law); *Kennedy v. Delo*, 959 F.2d 112, 116 (8th Cir.) (Missouri case relying on Missouri law), *cert. denied*, —— U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 116 (1992); *Leggins v. Lockhart*, 822 F.2d 764, 767 (8th Cir.1987) (Arkansas case relying, at least in part, on a Missouri Supreme Court decision), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). That the majority in this case cannot cite any pertinent appellate cases within the states that comprise the Eighth Circuit strongly supports the novelty of *Riggins*.

3. As a new rule of law, *Riggins* has retroactive application. To have retroactive application, the *Riggins* rule must fall within the second exception of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). That exception would allow the retroactive application of a novel constitutional claim if it constituted a "watershed rule[ ] of criminal procedure" and "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 311, 313, 109 S.Ct.

at 1076, 1077.[1] This case should be applied retroactively for the following reasons.

Even when compared to what is considered the paradigm of *Teague*'s second exception, the procedural rights at stake in *Riggins* demand retroactive application. In *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990), Justice Kennedy wrote for the majority and noted that the Court's decision in *Gideon v. Wainwright* illustrated the sort of rule coming within the *Teague* second exception. Unlike *Gideon*, which "only" dealt with the right to be represented by counsel in criminal trials, *Riggins* implicates not only rights related to the representation of counsel, but also the right to present a defense on one's own behalf, *see, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), the right to confront witnesses, *see, e.g., Coy v. Iowa*, 487 U.S. 1012, 1016–1020, 108 S.Ct. 2798, 2800–03, 101 L.Ed.2d 857 (1988), and the right to be free from governmental interference during trial, *see, e.g., Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2056–57, 95 L.Ed.2d 622 (1987). Considering the multiplicity of rights at stake in *Riggins*, each of which assumes a vital role in ensuring fundamentally fair and accurate trials, I believe *Riggins* is a prime candidate for retroactive application.

Moreover, when one considers the substantive due process rights implicated by the *Riggins* decision, its importance is elevated even further. As the Supreme Court has noted in several decisions over the past two decades, individuals possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs, *see, e.g., Washington v. Harper*, 494 U.S. 210, 221–22, 229, 110 S.Ct. 1028, 1036–37, 1040–41, 108 L.Ed.2d 178 (1990); *Mills v. Rogers*, 457 U.S. 291, 299 n. 16, 102 S.Ct. 2442, 2448 n. 16,

---

1. Although neither the magistrate judge nor the majority address the prejudice prong of the "cause" and "prejudice" test, the retroactive application of *Riggins* to this case strongly suggests that (if the facts are as Heffernan contends they are) there exists a reasonable probability that the involuntary medication of Heffernan adversely affected the outcome of his trial and rendered it fundamentally unfair. *Parkus v. Delo*, 33 F.3d 933, 938 (8th Cir.1994). In other words, if a

particular constitutional claim satisfies *Teague*'s second exception, it may also satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Lockhart v. Fretwell*, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), as the two standards are substantially the same. Thus, prejudice would exist subject to evaluation by the district court on remand.

73 L.Ed.2d 16 (1982) (assuming such an interest), and more generally in refusing medical treatment, *see, e.g., Vitek v. Jones,* 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980); *Parham v. J.R.,* 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979). Therefore, the forced ingestion of mind-altering drugs not only jeopardizes an accused's right to a fair trial, it also tears away another layer of individual dignity, rendering the criminal trial particularly dehumanizing.

In sum, the issues raised by Heffernan and all the circumstances alleged by Heffernan that (1) *Riggins* applies, (2) *Riggins* states a novel constitutional claim and (3) *Riggins* should be applied retroactively should be revisited on remand with such supplementation of the record as may be appropriate.

Accordingly, I would remand this case to the district court for further proceedings to afford Heffernan an opportunity to establish the facts supporting his *Riggins* claim, and if those facts are established, then to address the merits of Heffernan's habeas corpus petition.